Maureen H. Lennon
Malin Stearns Johnson
GARLINGTON, LOHN & ROBINSON, PLLP
199 West Pine • P. O. Box 7909
Missoula, MT 59807-7909
Telephone (406) 523-2500
Telefax (406) 523-2595
mhlennon@garlington.com
msjohnson@garlington.com

Attorneys for Plaintiff

FILED MAY 0 2 2008

MONTANA FOURTH JUDICIAL DISTRICT COURT
MISSOULA COUNTY

| | |
|---|---|
| JERRY MILLER,<br><br>Plaintiff,<br><br>v.<br><br>C.H. ROBINSON WORLDWIDE, INC., and C.H. ROBINSON COMPANY, INC. d/b/a C.H. ROBINSON TRANSPORTATION COMPANY, INC.,<br><br>Defendants. | Dept. No. 1<br>Cause No. DV-08-570<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

The Plaintiff, Jerry Miller, hereby alleges the following as his Complaint against Defendants.

A.  The Parties

1.  Plaintiff Jerry Miller is a resident of Lolo, Missoula County, Montana.

COMPLAINT AND DEMAND FOR JURY TRIAL                                   Page 1

2. C.H. Robinson Worldwide, Inc. is a Delaware Corporation. C.H. Robinson Company, Inc. d/b/a C.H. Robinson Transportation Company, Inc. is a Minnesota Corporation with its principal place of business in Eden Prairie, Minnesota. For purposes of this Complaint, these various corporate entities will hereinafter collectively be referred to as "Defendants" and/or "C.H. Robinson."

3. C.H. Robinson operates a transportation business in Montana out of an office in Whitefish, Montana.

B. <u>Jurisdiction and Venue</u>

4. This Court has jurisdiction over all matters asserted in this Complaint and Missoula County is the proper venue for trial pursuant to Montana Code Annotated §§ 25-2-121 and 25-2-122.

C. <u>Factual Background</u>

5. In March 2007, Jerry Miller was employed with Bob's Pickup & Delivery, Inc., a transportation firm operated out of Sydney, Montana. Mr. Miller worked out of his home office in Lolo, Montana. Mr. Miller earned a base salary of $960 per week plus a year-end bonus of $5,000 or more. Mr. Miller was provided with a new Buick LeSabre, a credit card to cover fuel and expenses, a cell phone, and a laptop, wireless mouse and printer for his home office.

6. In March 2007, C.H. Robinson made representations on its website and elsewhere, including but not limited to representations that it was an excellent company and employer and that it provided its employees with opportunities to develop their careers and reach their full potential.

7. In or around mid-March, 2007, relying on C.H. Robinson's representations, Mr. Miller approached C.H. Robinson to discuss the possibility of employment with C.H. Robinson.

8. In or around mid-March, 2007, C.H. Robinson employee Jim Cummings interviewed Mr. Miller.

9. On March 29, 2007, C.H. Robinson offered Mr. Miller employment as an Experienced Outside Transportation Sales Representative. As part of this offer of employment, C.H. Robinson promised Mr. Miller "the opportunities and challenges you need to reach your full potential" and the "opportunity for career development and professional growth," and emphasized the firm's "excellent reputation." Mr. Cummings told Mr. Miller that Mr. Miller's primary responsibility would be to secure new flatbed accounts.

10. In reliance on C.H. Robinson's representations, Mr. Miller accepted the position with C.H. Robinson, entered into an employment contract with C.H. Robinson, agreeing to work primarily out of his home office in Lolo, Montana, and began work on or about April 16, 2007.

11.   Mr. Miller took a reduction in salary to work for C.H. Robinson. He also gave up perks, such as a company car. C.H. Robinson required Mr. Miller to supply his own printer and other office equipment. C.H. Robinson did not supply Mr. Miller with adequate marketing materials for several months.

12.   According to C.H. Robinson's internal policies, Mr. Miller's manager was to work with him to "create 3-5 performance goals and 2-3 personal development goals."

13.   Mr. Miller's manager never met with him to create performance and personal development goals.

14.   Mr. Miller was given a Bonus Incentive Plan as a target compensation schedule in late March and accepted its terms on or about April 1, 2007, but was never told that, if he failed to meet any step in the Plan, he would be discharged.

15.   From April to October of 2007, Mr. Miller was never told that he would be required to meet the benchmarks described in the Bonus Incentive Plan within a specific time frame.

16.   On or about October 23, 2007, Jim Cummings told Mr. Miller that he had two months – until year's end – to make his "sales quota." No one told Mr. Miller what his "sales quota" was. Mr. Miller assumed it was the first tier on the Bonus Incentive Plan.

17. On or about October 29, 2007, Mr. Cummings called Mr. Miller in his Lolo office and told Mr. Miller that he would not be required to meet a "sales quota" by December 31, 2007.

18. Mr. Miller was not told about or trained in the use of Portfolio, a critical sales management tool available for C.H. Robinson employees' use, until mid-October, 2007.

19. Mr. Miller was prohibited from traveling to build a customer base and secure new accounts. Mr. Miller's travel to conduct initial and follow-up visits to large companies was either significantly restricted or prevented altogether.

20. Mr. Miller was required to spend significant amounts of time in Whitefish performing administrative tasks unrelated to his sales duties, such as booking trucks and setting delivery appointments, ostensibly because the office was understaffed. These administrative duties took away from the time Mr. Miller had to spend in his official duties securing flatbed accounts.

21. Mr. Miller was required to spend most of his sales time in Lolo conducting sales over the phone.

22. Despite these restrictions, Mr. Miller still achieved gross sales of $138,489.39 while employed with C.H. Robinson.

23. Along with sales, Mr. Miller was able to improve company relationships with several important customers, including Kennecott Copper, Ponderay Newsprint, and Idahoan/North American Foods.

24. Mr. Miller was given a performance evaluation dated December 5, 2007. The performance evaluation revealed that Mr. Miller met or exceeded the company's expectations in all categories. In no category was Mr. Miller's performance described as falling below company expectations.

25. At Mr. Miller's performance evaluation on December 5, 2007, Jim Cummings expressed appreciation of Mr. Miller's collective efforts on behalf of the Company and promised Mr. Miller an additional $2,000 compensation in February, 2008, when bonuses are distributed.

26. On or about December 13, 2007, while Mr. Miller was at home in Lolo, Montana, Jim Cummings called Mr. Miller at home and discharged Mr. Miller from employment with C.H. Robinson.

27. Mr. Miller did not receive his promised $2,000 bonus.

D. <u>Causes of Action</u>

<u>COUNT ONE – WRONGFUL DISCHARGE</u>

28. Plaintiff realleges the allegations set forth in Paragraphs 1 through 27.

29. Plaintiff was discharged on December 13, 2007.

30. Plaintiff's discharge was not for good cause.

31. In its actions and omissions towards Plaintiff, Defendants violated the express provisions of C.H. Robinson's personnel policies.

32. Plaintiff incurred damages, including, but not limited to, lost wages and fringe benefits as a direct and proximate result of Defendants' acts and omissions.

## COUNT TWO – INDUCING AN EMPLOYEE TO CHANGE JOBS

33. Plaintiff realleges the allegations set forth in Paragraphs 1 through 32.

34. In its actions and omissions relating to Plaintiff, Defendants induced, influenced, persuaded, and/or engaged Plaintiff to change jobs by means of deception, misrepresentation, or false advertising concerning the kind or character of work Plaintiff would be expected to perform at C.H. Robinson in Whitefish, Montana, causing Defendants to violate Montana Code Annotated § 39-2-303.

35. As a result of Defendants' violation of Montana Code Annotated § 39-2-303, Plaintiff is entitled to recovery of all damages stemming from Defendants' violation, including reasonable attorneys' fees.

## COUNT THREE – WAGE CLAIM

36. Plaintiff realleges the allegations set forth in Paragraphs 1 through 35.

37. Defendants failed to pay Plaintiff the bonus amount he earned and was promised during his employment with C.H. Robinson.

38. By failing to pay Plaintiff the full amount of wages he was owed, Defendants violated Montana Code Annotated § 39-3-204.

E. <u>Prayer for Relief</u>

WHERFORE, Plaintiff requests judgment against Defendants as follows:

1. For unpaid wages, in an amount to be determined at trial;

2. For damages arising from the wrongful termination, in an amount to be determined at trial;

3. For compensatory and punitive damages, in an amount to be determined at trial;

4. For reasonable attorney fees;

5. For a 110% penalty on the unpaid wages, pursuant to Montana Code Annotated § 39-3-206;

6. For interest at the appropriate legal rate on the unpaid wages and other damages;

7. For any other relief that the Court deems appropriate.

1  ## DEMAND FOR JURY TRIAL

2      COMES NOW the Plaintiff and hereby demands a trial by jury of all

3  issues so triable.

4

5      DATED this 30th day of April, 2008.

6          Attorneys for Plaintiff:

7          GARLINGTON, LOHN & ROBINSON, PLLP
        199 West Pine • P. O. Box 7909
8          Missoula, MT   59807-7909
        Telephone (406) 523-2500
9          Telefax (406) 523-2595

10

11          By _____
           Maureen H. Lennon

12

13

14

15

16

17

18

19

20

21

## VERIFICATION

STATE OF MONTANA)
                : ss.
County of Missoula  )

JERRY MILLER, being first duly sworn upon oath, deposes and says:

That he is the Plaintiff in the foregoing complaint, that he has read the foregoing, knows the contents thereof, and that the facts and matters therein contained are true, accurate and complete to the best of his knowledge and belief.

_____
Jerry Miller

**SUBSCRIBED AND SWORN** to before me this 24 day of April, 2008, by Jerry Miller in Missoula, Montana.

_____
Printed Name: _____
Notary Public for the State of Montana
Residing at _____
My Commission expires: _____

JILL S. MALONE
NOTARY PUBLIC-MONTANA
(NOTARIAL SEAL)
Residing at Missoula, Montana
My Comm. Expires Oct. 30, 2010